OPINION
{¶ 1} Appellant, Phyllis Gray, appeals an order of the Preble County Common Pleas Court, Probate Division ("the probate court"), awarding attorney fees to Indiana attorney Courtney B. Justice who represented appellee, Tanya Zimmerman, in a wrongful death action.
 {¶ 2} This case involves two separate persons, appointed by two separate courts in two separate states, each claiming the authority to prosecute a wrongful death action in Ohio and each seeking the payment of their attorney fees.
 {¶ 3} Kelly Romero (aka Kelly Montine) was killed in Preble County, Ohio on March 23, 2004, when her vehicle burst into flames after being rear-ended by a tractor trailer owned by Dawn Trucking, Inc. As relevant to this appeal, Kelly was survived by her two children, her mother (appellant), and a sister. Appellee Tanya Zimmerman is Kelly's former mother-in-law and the paternal grandmother of the children. Zimmerman lives in Indiana, appellant in Ohio. At the time of her death, Kelly was living in Preble County.
 {¶ 4} On March 31, 2004, the probate court appointed appellant as the administratix of Kelly's estate. On April 20, Zimmerman was appointed in Indiana as special administrator for the purpose of prosecuting a wrongful death action on behalf of Kelly's children. Two days later, Zimmerman, in her capacity as special administrator, filed a wrongful death action against Dawn Trucking in the Butler County Common Pleas Court ("the common pleas court"). Appellant, in turn, filed a wrongful death action against Dawn Trucking in the Preble County Common Pleas Court, Civil Division, on May 21. The complaint was filed by appellant in her capacity as administratix, Kelly's mother, and the guardian and next friend of the children. Appellant was and is represented by Ohio attorney Gray W. Bennett. Appellant was later granted leave to intervene in the wrongful death action in Butler County. *Page 3 
 {¶ 5} Appellant moved the probate court to order Zimmerman to stop acting in Ohio on behalf of the estate. Hence began the filing of motions, post-hearing briefs, and status reports in both the probate court and the common pleas court relentlessly challenging the parties' respective authority to prosecute the wrongful death action. Appellant also challenged Zimmerman's appointment by filing motions in Indiana courts. On September 3, 2004, the probate court granted appellant's motion and ordered Zimmerman "to stop acting on behalf of the estate in any matters and as to all assets of the estate, as they exist in * * * Ohio. The Court is aware that Mrs. Zimmerman has filed a wrongful death action in the Butler County Common Pleas Court. Zimmerman is hereby ordered to file a status report on said action, with this Court[.]" Zimmerman complained that the entry was granted ex parte without notice or a hearing, and moved to vacate the entry. She filed a status report as ordered.
 {¶ 6} A hearing was held in the probate court on October 12, 2004 before Judge Wilfred Dues. The hearing addressed the September 3, 2004 "cease and desist" entry and Zimmerman's appointment as special administrator. In December 2004, "based upon the hostile and angry demeanor of Judge Dues" during the October 12, 2004 hearing, Zimmerman moved to disqualify him. Judge Dues recused himself on December 29, 2004, and on February 14, 2005, retired Judge Richard E. Hole, II of Darke County was assigned to the case in the probate court.
 {¶ 7} A conference was also held in the common pleas court on October 13, 2004. According to a status report filed by Zimmerman, the common pleas judge (1) stated he would not remove or substitute Zimmerman as special administrator, (2) admitted Indiana attorney Justice pro hac vice, and (3) strongly admonished the parties to "renew settlement negotiations for the benefit of the children, expressing deep concern that the wrongful death claim was being ignored to their detriment[.]" According to Zimmerman, the parties met with *Page 4 
Judge Dues a few days after the parties' conference in the common pleas court on October 13, 2004. The parties met regarding a proposal for the joint prosecution of the wrongful death action and a fee contract for 40% of the recovery, including litigation costs, to be divided equally between the parties' attorneys; "Judge Dues orally gave his provisional approval." A proposal sent in November by Ohio attorney Bennett provided for litigation costs to be 30% of the recovery with the balance to be divided 20% to Bennett and ten per cent to Indiana attorney Justice.
 {¶ 8} On May 10, 2005, appellant moved the probate court for authority to settle the wrongful death action filed in the common pleas court (and a survivorship action). The motion stated that Dawn Trucking was willing to pay into the common pleas court its policy limits of one million dollars for the settlement of the wrongful death action and two separate cases arising out of the accident in which Kelly was killed. The motion stated it was reasonable to anticipate that a minimum of $800,000 would be available to settle the wrongful death and survivorship actions, and that Zimmerman's appointment as special administrator had been appealed and argued in Indiana courts.[1]
 {¶ 9} The record shows that Indiana attorney Justice received a letter dated March 18, 2005 and sent on behalf of Dawn Trucking, expressing the company's willingness to pay into the common pleas court the sum of one million dollars contingent upon a release. There is no mention in that letter of the other two cases. By April 4, however, correspondence sent to attorneys Justice and Bennett on behalf of Dawn Trucking or its insurance carrier refers to the additional cases. The correspondence also shows the company's mounting frustration *Page 5 
and unhappiness with the parties and their respective attorneys. Indeed, because the parties were unable and/or unwilling to settle the issue of who was the proper representative, the company was unable to obtain the parties' permission to pay the policy proceeds into the court in exchange for a full and final release. Following the settlement of the other cases, the balance of monies available to settle the wrongful death action was $801,074.[2]
 {¶ 10} By entry filed on September 27, 2005, the probate court found that Zimmerman had no relationship with Kelly, and therefore, no standing before the court. As a result, the probate court dismissed "all Motions and matters filed [with regard to the estate] by Courtney Justice other than the Motion to vacate the order to cease and desist operations in Ohio." The probate court then found that it had "no authority to rule on the suitability of * * * Zimmerman's appointment[.] It is hereby ordered that the Court's prior order [to cease and desist] of September 3, 2004 is hereby vacated." Finally, the probate court granted appellant's motion for authority to settle the wrongful death action. Meanwhile, the issue of which party was the proper representative remained before the common pleas court.
 {¶ 11} On November 4, oral argument was held in the common pleas court on the parties' cross motions to dismiss the other from the proceedings. At the end of the oral argument, the common pleas court ordered the parties to go to mediation. Two days before mediation, Ohio attorney Bennett faxed the following letter to the probate court:
 {¶ 12} "This letter will serve the purpose of memorializing the orders, which you gave to me during our telephone conversation [today]. * * * Specifically, I am ordered to go to mediation in Butler County and offer to Zimmerman via her counsel the following: If *Page 6 
Zimmerman will withdraw from the Butler County wrongful death proceedings and cease her pursuit to be designated the real party in interest in said proceedings, then you will preserve to her counsel the right to come to [the probate court] and make application for attorney fees at the appropriate time."
 {¶ 13} On December 9, the parties attended mediation in Butler County. During laborious negotiations, the mediator called Probate Judge Hole as to his opinion regarding the parties' attorney fees. Judge Hole's preliminary view was that 30% of the gross recovery would be divided equally between the parties for their attorney fees. The following mediation agreement was then read into the record, subject to approval by the probate court:
 {¶ 14} (1) Dawn Trucking will pay $801,074 to an escrow agent in exchange for a full release; (2) Zimmerman and appellant will dismiss their claims in Butler County; (3) appellant will dismiss her wrongful death claims in Preble County; (4) Zimmerman will dismiss her special administrator appointment; (5) appellant will dismiss her appeal of Zimmerman's appointment; (6) Judge Hole will apportion the proceeds in the escrow agent's hands pursuant to Ohio law, including division of attorney fees between the parties' attorneys; (7) Zimmerman's participation in the agreement is contingent upon a 50/50 division of attorney fees of 30% of the gross recovery; (8) the agreement releases all claims as to all parties and their agents and attorneys; and (9) appellant and her attorney specifically make no recommendation as to the amount or division of attorney fees. On December 21, appellant moved the probate court to schedule a hearing on the parties' mediation agreement. At the end of 2005, the probate court ordered the parties to release all named defendants in the Butler County wrongful death action.
 {¶ 15} On January 23, 2006, Zimmerman filed an application for attorney fees in the probate court. That same day, following a hearing on the parties' mediation agreement, the probate court ordered appellant to settle the wrongful death action in Butler County and *Page 7 
ordered that the issue of attorney fees be addressed at a separate hearing.
 {¶ 16} In response to Zimmerman's attorney fees application, appellant once again argued that Zimmerman had no authority in Ohio to settle the wrongful death action and no "probate standing" in Ohio. Appellant also asserted that no agreement as to attorney fees was reached during the December 9, 2005 mediation. Appellant filed her application for attorney fees in April.
 {¶ 17} The probate court held a hearing on the parties' attorney fees applications in June. Appellant argued that Zimmerman was not entitled to any attorney fees because she had no authority in Ohio to settle the wrongful death action and no "probate standing" in Ohio. Appellant acknowledged that because the common pleas court had ordered the parties to go to mediation, the issue of who was the proper representative for the wrongful death action was never resolved in Butler County. The probate court declined to interfere with Zimmerman's appointment as special administrator in Indiana and with rulings by the common pleas court.
 {¶ 18} The probate court then referred to, and eventually adopted, the common pleas court's recommendation in the fall of 2004 that attorney fees be divided equally between the parties. The probate court expressed its astonishment the wrongful death action could not be settled for several months simply because the parties were arguing over attorney fees.
 {¶ 19} The probate court then allocated the proceeds as follows: (1) attorney fees of 30% of the proceeds to be divided equally between the parties, resulting in attorneys Justice and Bennett receiving $119,161.10 each; (2) $5,500 for the probate court for guardian ad litem fees previously paid; (3) $228,757.38 for each of Kelly's children; (4) $53,060.56 for appellant; and (5) $26,030.28 for Kelly's sister. The probate court declined to grant appellant's request to give $15,000 to the estate for the survivorship action. The checks for the attorney fees were given to Attorneys Justice and Bennett before the end of *Page 8 
the hearing.
 {¶ 20} Appellant appeals, raising three assignments of error.
 {¶ 21} In her brief, Zimmerman argues that the appeal is moot and must be dismissed because Ohio attorney Bennett received and accepted a $119,161.10 check from the probate court as payment of his attorney fees. Thus, before we examine the merits of the assignments of error, we must first dispose of the mootness argument.
 {¶ 22} It is well-established that satisfaction of a judgment renders an appeal from that judgment moot. Blodgett v. Blodgett (1990),49 Ohio St.3d 243, 254. "Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away * * * the right to appeal or prosecute error or even to move for vacation of judgment."Rauch v. Noble (1959), 169 Ohio St. 314, 316. Likewise, accepting payment of the judgment renders an appeal from that judgment moot. SeeMason v. Mason, Cuyahoga App. Nos. 80368 and 80407, 2002-Ohio-6042.
 {¶ 23} The Ohio Civil Rules provide an appellant with the opportunity to seek a stay of a lower court's judgment pending appeal. Under Civ. R. 62(B), an appellant is entitled, as a matter of law, to a stay of execution pending appeal, provided that he posts an adequate supersedeas bond. Courts have consistently recognized such a stay as the proper remedy for an appellant seeking appellate redress of an allegedly erroneous monetary judgment. Hagood v. Gail (1995), 105 Ohio App.3d 780,785. In the case at bar, at the end of the June 2006 hearing, attorney Bennett orally moved the probate court to stay distribution of the funds pending appeal. The motion was denied. Attorney Bennett never sought a stay under Civ. R. 62(B) after the probate court issued its judgment entry that same day.
 {¶ 24} Appellant, however, challenges the mootness argument on two grounds. First, there was no opportunity to seek a stay under Civ. R. 62(B) because the checks for the *Page 9 
payment of the attorney fees were intentionally cut and distributed by the probate court before the end of the June 2006 hearing and before the probate court journalized its entry that same day. Appellant contends that in light of the fact that Civ. R. 62(B) deals with stays on appeal post-order but prior to distribution, once the funds were distributed, Civ. R. 62(B) was no longer applicable. Second, the appeal does not merely challenge an allegedly erroneous monetary judgment. Rather, it challenges Zimmerman's standing to apply for attorney fees and the probate court's authority to consider such application and award attorney fees to Zimmerman.
 {¶ 25} Upon reviewing the record, we find that this case does not fit neatly in the types of mootness cases cited above. In addition, it is a basic tenet of Ohio jurisprudence that cases should be decided on their merits where possible rather than on procedural grounds. See MadisonCty. Bd. of Commrs. V. Bell, Madison App. No. CA2005-09-036,2007-Ohio-1373; State ex rel. Lindenschmidt v. Butler Cty. Bd. ofCommrs., 72 Ohio St.3d 464, 1995-Ohio-49. Given the unusual unfolding of events as orchestrated by the probate court at the June 2006 hearing, we decline to find that this appeal is moot. We therefore address appellant's assignments of error.
 {¶ 26} Assignment of Error No. 1:
 {¶ 27} "THE [PROBATE] COURT ERRED WHEN IT CONSIDERED AND ACTED UPON ZIMMERMAN'S SUPP.R. 70 AND 71 APPLICATIONS." [SIC]
 {¶ 28} Relying upon Ramsey v. Neiman, 69 Ohio St.3d 508,1994-Ohio-359, appellant argues that a probate court has broad discretion to award attorney fees under a Sup. R. 70-71 application[3]
as long as the application is made by a proper personal representative appointed by an Ohio probate court under R.C. 2125.02. Appellant argues that because *Page 10 
Zimmerman was never appointed by an Ohio probate court, had no "probate standing" in Ohio, and therefore had no authority to settle the wrongful death action, it was inappropriate for the probate court to entertain her application and award her attorney fees.
 {¶ 29} It is well-established that the payment of reasonable attorney fees lies within the probate court's sound discretion. In re Estate ofFugate (1993), 86 Ohio App.3d 293, 298. An abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. See In reEstate of Brady, Cuyahoga App. No. 88107, 2007-Ohio-1005. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. An abuse of discretion will be found where the probate court's decision is not supported by the record or is contrary to law. See In re Stillwell (Apr. 10, 2000), Butler App. No. CA99-06-112, In re Estate of York (1999), 133 Ohio App.3d 234.
 {¶ 30} In Ramsey, the issue before the Ohio Supreme Court was "whether a wrongful death action may be brought under R.C. Chapter 2125 by a person who has not been appointed by a court to be the decedent's personal representative." Ramsey, 69 Ohio St.3d 508. Under R.C. 2125.02(A)(1), an action for wrongful death must be brought in the name of the personal representative of the decedent. R.C. 2125.02(C), in turn, states that "[a] personal representative appointed in this state, with the consent of the court making the appointment and at any time before or after the commencement of an action for wrongful death, may settle with the defendant the amount to be paid." Relying upon the meaning of "personal representative" when R.C. Chapter 2125 was first enacted, and R.C. 2125.02(C), the supreme court held that "[a] cause of action in wrongful death arising under R.C. Chapter 2125 must be brought in the name of a person appointed by a court to be the administrator, executor, or personal representative of the decedent's estate." Id. at 512.
 {¶ 31} Notwithstanding Ramsey, we note that the probate court and the common pleas *Page 11 
court both declined to interfere with Zimmerman's appointment as special administrator and never specifically ruled on the issue of who was the proper representative. We decline to do so as well, and instead review the probate court's award of attorney fees under our decision in In reEstate of Brown (1992), 83 Ohio App.3d 540.
 {¶ 32} Ohio probate courts have equitable powers. See R.C. 2101.24(C). "In rare cases, a probate court may authorize the payment of reasonable fees from the estate to an attorney employed by an heir or beneficiary where the attorney's services were rendered to the benefit of the whole estate." Brown at 542. "Compensation is based on `the equitable doctrine that where one has created, augmented, or preserved a fund he may be compensated therefrom.'" Id. Where the beneficiary is reasonably justified in bringing suit, attorney fees are justified as long as they benefit the estate. Id. Attorney fees have been denied where heirs have been involved in efforts antagonistic to the interests of the estate and where heirs were serving their own particular interests and not the estate as a whole. Id. The term "for the benefit of the estate" has been defined as "`whether or not all of the beneficiaries or distributees of the estate have become entitled to receive from the assets of the estate, when distributed, greater sums than those which they would have received had such attorney's services not been rendered.'" Id. at 543.
 {¶ 33} Upon reviewing the voluminous record in its entirety, we find that the services of Indiana attorney Justice did benefit the estate and that the probate court did not abuse its discretion by awarding Zimmerman attorney fees.
 {¶ 34} It is undisputed that Zimmerman did not file the wrongful death action on behalf of all next of kin, which would have included appellant and Kelly's sister. However, we note that under Indiana law, Zimmerman could only file a wrongful death action on behalf of Kelly's children. Although the statute of limitations to file a wrongful death action is two years, Zimmerman filed the action less than a month after Kelly's death. According to *Page 12 
Zimmerman, while custody and visitation issues regarding Kelly's children were being sorted out, nothing was being done by appellant or her attorney to determine the extent of liability insurance and/or assets available for the payment of wrongful death/personal injury claims arising out of the accident. Dawn Trucking and its driver claimed to be judgment-proof.
 {¶ 35} Indiana attorney Justice retained the services of an Ohio attorney in early December 2004 for the purpose of determining Dawn Trucking's liability as well as the potential liability of Nissan (Kelly was driving a Nissan vehicle) and the Miller Brewing Company (which had loaded Dawn Trucking's trailer). During the June 2006 hearing, Ohio attorney Bennett acknowledged that the Ohio attorney retained by Zimmerman had fully investigated the liability issue of Nissan and the Miller Brewing Company and "did a great deal of work on that." As noted earlier, Indiana attorney Justice received a letter dated March 18, 2005 and sent on behalf of Dawn Trucking, expressing the company's willingness to pay into the common pleas court its one million dollar policy limits in exchange for a full release. There was no mention in that letter of other cases arising out of the accident. By April 4, 2005, however, correspondence sent to attorneys Justice and Bennett on behalf of Dawn Trucking or its insurance carrier refers to additional cases. By the time the other cases were settled, the balance of monies available to settle the wrongful death action was no longer a million dollars but $801,074.
 {¶ 36} Further, the record shows that appellant negotiated the issue of the parties' attorney fees. Although the probate court ordered Zimmerman in September 2004 to stop acting on behalf of the estate, it nevertheless ordered her to file a status report on her wrongful death action. The September 2004 cease and desist entry was later vacated. Two days before a mediation agreement, which included the parties' attorney fees, was read into the record in December 2005, Ohio attorney Bennett faxed the following letter to the probate court: "Specifically, I am ordered to go to mediation in Butler County and offer to Zimmerman *Page 13 
via her counsel the following: If Zimmerman will withdraw from the Butler County wrongful death proceedings and cease her pursuit to be designated the real party in interest in said proceedings, then you will preserve to her counsel the right to come to [the probate court] and make application for attorney fees at the appropriate time."
 {¶ 37} In light of all of the foregoing, we cannot say that the probate court, based upon the record before us, acted so unreasonably, arbitrarily, or unconscionably that its attorney fees award to Zimmerman amounted to an abuse of discretion. Appellant's first assignment of error is overruled.
 {¶ 38} Assignment of Error No. 3:
 {¶ 39} "THE [PROBATE COURT] ERRED WHEN IT USED THE EXISTENCE OF THE CONCEPT OF AN OHIO SPECIAL ADMINISTRATOR TO JUSTIFY THE INVOLVEMENT OF AN INDIANA SPECIAL ADMINISTRATOR."
 {¶ 40} Appellant argues that the probate court erred by relying on the Ohio statutory provision governing special administrators to justify Zimmerman's involvement in the wrongful death action. The record shows that during the June 2006 hearing on attorney fees, the probate court briefly referred to "a provision of the Ohio Revised Code that a special administrator can be appointed to file a lawsuit for wrongful death action." The court then declined to interfere with Zimmerman's appointment as special administrator.
 {¶ 41} R.C. 2113.15 governs special administrators and provides in relevant part that "[w]hen there is a delay granting letters testamentary or of administration, the probate court may appoint a special administrator to collect and preserve the effects of the deceased." Appellant is correct that R.C. 2113.15 does not apply since appellant was appointed administratix before Zimmerman was appointed special administrator. We note, however, that the probate court did not cite a specific statutory provision and may have referred to R.C. 2113.75 instead, notwithstanding the court's use of the phrase "special administrator." *Page 14 
 {¶ 42} R.C. 2113.75 states that "[a]n executor or administrator appointed in any other state or country may commence and prosecute an action or proceeding in any court in this state, in his capacity as executor or administrator, in like manner and under like restrictions as a nonresident is permitted to sue."
 {¶ 43} Although R.C. 2113.75 simply refers to "an executor or administrator appointed in [another] state," courts have construed it to specifically allow "personal representatives" to maintain wrongful death actions in Ohio courts. See Ahlrichs v. Tri-Tex Corp. (1987),41 Ohio App.3d 207 (R.C. 2113.75, in conjunction with R.C. 2125.02, empower a personal representative, appointed in another state, to institute and maintain an action for wrongful death in Ohio, provided that a personal representative, appointed in Ohio, has not already done so);McCluskey v. Rob San Services, Inc. (S.D.Ohio 1977), 443 F.Supp. 65 (a personal representative appointed in another state may bring a wrongful death action in Ohio; however, under R.C. 2113.75, a nonresident personal representative suing in Ohio is in the same position as other nonresident plaintiffs rather than of a personal representative appointed in Ohio); and Glenn v. Trans World Airlines, Inc. (E.D.N.Y. 1962), 210 F.Supp. 31 (Ohio allows foreign personal representatives to maintain wrongful death actions in its courts).
 {¶ 44} We once again note that the probate court and the common pleas court both declined to interfere with Zimmerman's appointment as special administrator and never specifically ruled on the issue of who was the proper representative. Incorporating our analysis under the first assignment of error here, we find no error in the probate court's erroneous but brief reference to a "special administrator" immediately before its refusal to interfere with Zimmerman's appointment as special administrator. Appellant's third assignment of error is overruled.
 {¶ 45} Assignment of Error No. 2: *Page 15 
 {¶ 46} "THE PREBLE COUNTY PROBATE COURT ERRED BY ABUSING ITS DISCRETION WHEN IT INJECTED ITSELF INTO THE SETTLEMENT PROCEEDINGS IN THE BUTLER COUNTY WRONGFUL DEATH ACTION AND THEN HELD TO THAT POSITION IN THE SUPP.R. 70 71 PROCESS." [SIC]
 {¶ 47} Appellant takes issue with the probate court's reference to and adoption, during the June 2006 hearing, of the common pleas court's recommendation as to attorney fees. Appellant also asserts that when presented with the opportunity to move the wrongful death action through mediation, "Judge Hole injected himself into the wrongful death proceedings by making it very clear to counsel for both parties that he expected the mediation to be successful, that attorney fees would be established pursuant to the 2004 suggestion of [the common pleas court] and that if counsel did not make it happen, ramifications would result because he would `report somebody to the ethics committee.'" Appellant takes issue with the fact that the foregoing position was taken before there was a proposed settlement and before the Sup. R. 70 applications were filed.
 {¶ 48} Finally, appellant summarily challenges the probate court's allocation of the proceeds. The record shows that both attorneys, appellant, and Kelly's sister all received $1,000 less than anticipated. The probate court also declined appellant's request to give $15,000 to the estate for the survivorship action. According to appellant, "it is difficult to conceive a more unreasonable, arbitrary or unconscionable attitude on the part of the Court."
 {¶ 49} We disagree.
 {¶ 50} We note at the outset that there is nothing in the record to support the probate court's alleged threat to report somebody to the ethics committee. Upon reviewing the voluminous record and the numerous pleadings filed by the parties to dismiss one another, we cannot say that the probate court abused its discretion. The probate court was faced with parties that were unable and/or unwilling to settle their differences so that the proceeds could *Page 16 
be deposited with the court (and earn interest). Dawn Trucking and its insurance carrier were both frustrated with the impact on the wrongful death action of the parties' fight over who was the proper representative.
 {¶ 51} The record shows that while the probate court considered the common pleas court's recommendation as early as 2005, it did not adopt it until after the Sup. R. 70 applications were filed and after the June 2006 hearing on attorney fees. Simply because the probate court adopted the common pleas recommendation after being on the case for over a year does not equate to an abuse of discretion. In fact, the transcript of the June 2006 hearing shows the probate court's surprise that the common pleas court could "make a recommendation as to attorney fees * * * if [it] didn't know what was available[.]" As to the probate court's decision to give nothing to the estate and to subtract $1,000 from the persons listed above, appellant does not tell us how it was an abuse of discretion. We cannot say that it was so unreasonable, arbitrary, or unconscionable as to amount to an abuse of discretion.
 {¶ 52} Appellant's second assignment of error is overruled.
 {¶ 53} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] In July 2005, the Indiana court found it had jurisdiction to appoint Zimmerman as special administrator and denied appellant's motion to dismiss the case. The Indiana court noted that although appellant was aware of Zimmerman's appointment as early as May 2004, she did not challenge the appointment in the Indiana court until February 2005. The court also noted that Zimmerman's appointment was further justified by the fact that, unlike appellant, she had no financial interest in the outcome of the wrongful death action or the administration of the estate. In a status report filed a few days later in the probate court, appellant vowed to appeal the Indiana court's decision.
[2] A letter dated October 4, 2005 and sent on behalf of Dawn Trucking once again asked the parties to allow its insurance carrier to pay the funds into the common pleas court in exchange for a full and final release. The letter states that "[a]t least, if the money is paid into Court at this time while the two of you are fighting over who is the proper representative, the amount of the settlement will draw interest. In my opinion, your clients' interests are not protected unless the money is deposited into Court now. They are losing funds each day that the two of you fail to agree on the terms of the settlement. * * * Therefore, I would appreciate it if each of you would address the topic of settlement rather than fighting amongst yourselves as to who is the proper representative."
[3] Sup. R. 70 governs applications to approve settlement and distribution of wrongful death and survival claims. Sup. R. 71 governs applications for and awards of attorney fees in probate court for the administration of estates. *Page 1