MEMORANDUM OPINION
{¶ 1} Appellants, Irene K. Makridis and George N. Kafantaris, appeal from the judgment entry of the Trumbull County Probate Court denying their application for attorney fees arising out of their representation of specific beneficiaries to a settlement of a wrongful death suit. For the reasons herein, we affirm.
 {¶ 2} The estate of John Michael Keytack, deceased, was filed after the minor drowned in a storm drain in Warren, Ohio. The decedent was survived by his parents, John S. Keytack and Lauretta Keytack, two minor siblings, Julie Keytack and Joseph Keytack, and two adult half-siblings, JoAnn Mendoza and Gina Wargo. The *Page 2 
Trumbull County Probate Court appointed John S. Keytack as administrator of the estate after which, Mr. Keytack filed a wrongful death lawsuit against the city of Warren. On the day trial was to commence, a proposed settlement was reached and an application to approve the wrongful death settlement was filed with the Probate Court pursuant to Sup. R. 70.
 {¶ 3} On December 21, 2007, the probate court held a hearing on the application to approve the wrongful death settlement. Appearing were Attorney Michael Scala on behalf of the administrator, Mr. Keytack; Attorney James Federicka, as guardian ad litem; Attorney Irene Makridis on behalf of Mrs. Keytack; and Attorney George Kafantaris on behalf of JoAnn Mendoza and Gina Wargo. Upon agreement of the parties, the court approved the wrongful death settlement of $500,000 and ordered distribution of the proceeds.
 {¶ 4} Although Attorney Makridis and Attorney Kafantaris represented certain of the beneficiaries, neither submitted a fee application against the gross settlement proceeds. However, on January 22, 2009, Attorney Makridis filed a motion based upon a contingent fee contract requesting attorney fees in the amount of $8,154.96, or 10% of Mrs. Keytack's settlement proceeds; later, on February 12, 2008, Attorney Kafantaris filed a motion requesting attorney fees in the amount of $5,871.57 premised upon a similar contingent fee agreement, i.e., 10% of the settlement proceeds received by his clients. The probate court scheduled the motions for an evidentiary hearing.
 {¶ 5} On March 19, 2008, a hearing was held; the only testimony offered at the hearing was delivered by Attorney Scala, who generally explained his role in the case as the principal attorney for the estate. He indicated that both attorneys Makridis and *Page 3 
Kafantaris were cooperative in having their clients available regarding trial preparation. Although they did not assist in the litigation of the case or the settlement negotiations, Attorney Scala testified attorneys Makridis and Kafantaris involved themselves in the case "definitely several hours."
 {¶ 6} After reviewing and considering the factors set forth under Prof.Cond.R. 1.5, which govern a court's discretion relating to attorney fees, the probate court concluded:
 {¶ 7} "* * * attorney Makridis and attorney Kafantaris failed to submit sufficient evidence of the factors enumerated in Prof.Cond.R. 1.5 in the determination of a reasonable fee for the services performed." The court thus denied the motions.
 {¶ 8} Appellants Makridis and Kafantaris now appeal and assert the following assignment of error:
 {¶ 9} "The probate court erred in ordering adult beneficiaries of wrongful death action not to pay appellant attorneys' contingent fees for representing those beneficiaries in the negotiation and confection of the allocation of the wrongful death settlement proceeds."
 {¶ 10} Appellants assert several arguments in support of their assigned error. Their first argument asserts the probate court did not have "jurisdiction to deny contingency fees" as appellants were retained by beneficiaries of the wrongful death suit to protect those parties' personal interests. Appellants seem to argue the probate court was without authority to deny their fee application because their representation did not relate to the litigation and/or settlement of the wrongful death claim, matters managed by the attorney for the decedent's estate and completed for the benefit of the *Page 4 
estate. Rather, appellants assert they were retained to protect the individual interests of specific beneficiaries of the wrongful death settlement. To the extent their representation was unconnected to the estate itself, appellants conclude the probate court was without jurisdiction to deny their application for fees.
 {¶ 11} Initially, appellants' jurisdictional argument is conceptually inconsistent. Defined broadly, "jurisdiction" is the power of a court to hear and decide a controversy between parties and to enter judgment thereon. See, e.g., Morrison v. Steiner (1972), 32 Ohio St.2d 86, 87. If the probate court lacked jurisdiction "to deny" an application for fees, it, by necessary implication, had no jurisdiction to sustain such an application. Taking appellants' contention to its logical conclusion, even had the probate court accepted their fee application, any subsequent judgment entry endorsing the award would be a legal nullity. Oddly, appellant Kafantaris seemed to recognize this at the hearing:
 {¶ 12} "ATTORNEY KAFANTARIS: I make a motion that — — it's an unusual case. I make a motion that the fee agreement be (inaudible) approved because it falls outside the scope of the powers of the probate court.
 {¶ 13} "* * *
 {¶ 14} "THE COURT: If you're saying I don't have jurisdiction, Mr. Kafantaris, then are you moving to dismiss?
 {¶ 15} "* * *
 {¶ 16} "ATTORNEY KAFANTARIS: Motion to dismiss, Your Honor, because it does not involve the settlement. It does not involve attorney fees for the settlement, attorney fees for the wrongful death and distribution, which with all respect, the *Page 5 
language in the statute does not fall under the Court's jurisdiction, so on those grounds, I make a motion that the matter be adjourned, I guess."
 {¶ 17} When a party moves a court to sustain an application for fees, he or she does so with the acknowledgement or expectation that the court possesses jurisdiction to afford him or her the relief sought. Here, the parties moved the court to accept their fee applications but, during the hearing, argued the court did not have jurisdiction over the matter. The schizophrenic nature of this argumentation makes it impossible to determine what relief appellants believed they could obtain. However, we do not need to waste any additional energy attempting to untie appellants' various semantical knots.
 {¶ 18} Sup. R. 70 addresses the process by which a settlement of wrongful death and survival claims must be handled in the probate court. It provides, in relevant part:
 {¶ 19} "(A) An application to approve settlement and Distribution of Wrongful Death and Survival Claims * * * shall contain a statement of facts, including the amount to be allocated to the settlement of the claim and the amount, if any, to be allocated to the settlement of the survival claim. The application shall include the proposed distribution of the net proceeds allocated to the wrongful death claim.
 {¶ 20} "* * *
 {¶ 21} "(C) The application shall state what arrangements, if any, have been made with respect to counsel fees. Counsel fees shall be subject to approval by the court."
 {¶ 22} Appellants admittedly did not submit their fee applications to the probate court at the time the attorney for the estate filed his application for approval of settlement and distribution of proceeds. Appellants argue they did not need to do so *Page 6 
because, in their estimation, the fee agreements were unrelated to the litigation and settlement of the wrongful death claim.[1] Irrespective of whether appellants were involved in the principal litigation or settlement negotiations (which, according to the evidence at the hearing, they did provide their clients advice regarding settlement proposals), their representation was fundamentally connected to the underlying wrongful death claim. Appellants recognize they were retained to protect the legal interests of certain beneficiaries within the limited context of the wrongful death suit. One can fairly and reasonably deduce, therefore, that appellants' representation was necessarily premised upon the wrongful death suit and the proceeds of its settlement. Appellants' fee arrangements were accordingly within the purview of Sup. R. 70(C).
 {¶ 23} Appellants nevertheless claim that because proceeds from settlements of wrongful death claims are not estate assets, they are not subject to probate administration and distribution.
 {¶ 24} Appellants are correct that "funds recovered by a personal representative in a wrongful death action are intended for the exclusive benefit of the statutory beneficiaries and are not an asset of the decedent's estate." (Emphasis sic.) State ex rel. Goldberg v.Mahoning County Probate Court, 93 Ohio St.3d 160, 163, 2001-Ohio-1297. However, this point is irrelevant. Simply because the proceeds from a wrongful death action are not technically estate assets does not imply the probate court is precluded from approving the settlement. The probate court's involvement in the instant settlement was a function of Sup. R. 70. The wrongful death claim and its subsequent *Page 7 
settlement was an independent proceeding separate from the administration of the decedent's estate. In fact, the probate court drew this distinction at the hearing in response to appellant Kafantaris' argument:
 {¶ 25} "* * * Let me just correct what you're saying. We're not talking about the estate because this is a wrongful death action, and it's controlled by Statute, 21 — Chapter 2125, so we're not talking about an estate. We're talking about when the fiduciary acting on behalf, as a personal representative on behalf of the persons entitled to receive distribution from the settlement of the wrongful death case, so, and as you may be aware, when you fill out the necessary form to be submitted to the Court, it relates to the gross settlement, payment of expenses, payment of attorney fees, and the distribution to the beneficiaries, the heirs of the person. This is why it's important for the Court in its evaluation of whether or not to approve the wrongful death settlement, it's looking at what are the total fees, what are the total expenses, and what are the amounts to be distributed among the next of kin, so that's the importance of looking at, is this a fair settlement. Does this fairly and adequately compensate the beneficiaries for the death of a loved one. That's why in this situation, looking at the request for fees and expenses, we had the hearing that Mr. Scala [the attorney for the estate] presented that, Mr. Scala presented the expenses, I asked if there was any questions, any objections, everybody just, to my recollection, there was no objection or exception being taken to those attorney fees and expenses. As a result of which, I approved those expenses and the distribution to the family members of the deceased boy, and if it had been brought to my attention that there were, as you put it and described the *Page 8 
agreements outside of what was being presented to the Court, it would have undoubtedly influenced my assessment of the settlement fees and expenses * * *."
 {¶ 26} As Sup. R. 70(C) clearly provides, any arrangements regarding counsel fees related to the settlement and distribution of a wrongful death claim must be submitted with the application for approval of the settlement and distribution itself. By failing to submit their fee arrangements to the probate court pursuant to Sup. R. 70(C), appellants, either through accident or strategy, ignored the procedural requirements of the Rules of Superintendence. The trial court had jurisdiction over appellants' fee agreements and they were obligated to submit the same with the application for approval of the settlement and distribution.
 {¶ 27} Appellants next assert, notwithstanding their previous arguments, the probate court abused its discretion in denying their fee application.
 {¶ 28} It is well established that the payment of reasonable attorneys fees rests with the probate court's sound discretion. In re Estate ofFugate (1993), 86 Ohio App.3d 293, 298. An abuse of discretion connotes behavior that is arbitrary, unreasonable, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In applying an abuse of discretion standard, a reviewing court shall not substitute its judgment for that of the trial court. In re Estate of Romero, 12th Dist. No. CA2006-06-015, 2007-Ohio-2157, at ¶ 29. An abuse of discretion will be found where the probate court's decision is unsupported by the record or is contrary to law. In re Estate of York (1999), 133 Ohio App.3d 234.
 {¶ 29} Attorney fees in all matters are governed by Prof.Cond.R. 1.5, which provides: *Page 9 
 {¶ 30} "(a) A lawyer shall not make an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. The factors to be considered in determining the reasonableness of a fee include the following:
 {¶ 31} "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 {¶ 32} "(2) the likelihood, if apparent to the client that the acceptance of the particular employment will preclude other employment by the lawyer;
 {¶ 33} "(3) the fee customarily charged in the locality for similar legal services;
 {¶ 34} "(4) the amount involved and the results obtained;
 {¶ 35} "(5) the time limitations imposed by the client or by the circumstances;
 {¶ 36} "(6) the nature and length of the professional relationship with the client;
 {¶ 37} "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
 {¶ 38} "(8) whether the fee is fixed or contingent." (Emphasis sic.)
 {¶ 39} In its judgment entry, the trial court set forth the Prof.Cond.R. 1.5 factors and concluded that appellants failed to submit any evidence in support of their position that they were entitled to 10% of their respective clients' settlement proceeds.
 {¶ 40} The only testimony offered at the hearing was from Attorney Michael Scala, attorney for the estate. Although Mr. Scala testified the standard rate for fees are between $125.00 per hour to a high of $200.00 per hour, there was no clear, unequivocal evidence as to the amount of time appellants spent with their respective *Page 10 
clients or the specific type of representation provided. Although appellants argued, pursuant to their fee agreements, they were entitled to 10% of the settlement proceeds their clients received, they put forth no evidence that the work they did would support such a windfall. The trial court did not abuse its discretion in not enforcing the fee agreement.
 {¶ 41} Next, we shall consider the trial court's decision awarding appellants no fees. While there was evidence that appellants spent "several" hours representing their clients in relation to the underlying claim, appellants filed no documentation and provided no evidence of the specific time they spent on the case; in fact, although appellants' assert they were retained to protect their clients' rights, the record does not precisely disclose the nature and quality of their representation. Appellants failed to present evidence regarding the difficulty of the issues they managed, and there is nothing in the record indicating appellants' representation precluded other employment opportunities; finally, appellants submitted no evidence regarding their experience and reputation as it related to the services they rendered in this case. The record demonstrates appellants played no role in managing any aspect of the underlying litigation and did not participate in settlement negotiations. In light of this evidence (or absence thereof), we hold the trial court did not abuse its discretion in summarily overruling appellants' motion for fees.
 {¶ 42} Appellants' sole assignment of error is without merit.
 {¶ 43} For the reasons discussed in this opinion, the judgment entry of the
Trumbull County Probate Court is hereby affirmed.
DIANE V. GRENDELL, P.J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] Of course, this position will invariably return us to appellants' jurisdictional conundrum: if appellants did not need to submit their application for fees at the time the application to approve the settlement and distribution was before the court (because the court lacked jurisdiction over the issue of their fees), it is unclear how the court would be suddenly vested with the authority to sustain the same applications after the settlement and distribution had been approved. *Page 1